**STATE of Tennessee, Appellant/Cross Appellee,**

v.

**Mark A. PATTON, Appellee/Cross Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 6, 1994.

Permission to Appeal Denied by the Supreme Court March 6, 1995.

Herbert S. Moncier and Ann Short, Attorneys, Knoxville, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Kimbra R. Spann, Asst. Atty. Gen., Nashville, Charles Hawk, Dist. Atty. Gen., and Frank Harvey, Asst. Dist. Atty. Gen., Kingston, for appellee.

## OPINION

WADE, Judge.

The defendant, Mark A. Patton, was indicted by the Roane County Grand Jury for the following offenses:

*Count One:* possession with intent to deliver marijuana, a schedule VI drug;

*Count Two:* possession with intent to sell marijuana;

*Count Three:* unlawful delivery of Alprazolam, a schedule IV drug;

*Count Four:* unlawful sale of Alprazolam; and

*Count Five:* unlawful flight.

In a subsequent indictment, the defendant was charged with unlawfully tampering with evidence. The defendant filed a motion to dismiss the second indictment and the first four counts of the original indictment on the basis that the facts alleged did not establish offenses. The trial judge overruled the motion as to counts three and four of the original indictment, but granted dismissals on counts one and two and the second indictment. The state was granted an interlocutory appeal pursuant to Tenn.R.App.P. 3 and 9 as to each dismissal. The defendant was granted an interlocutory appeal of the trial court's refusal to dismiss counts three and four of the original indictment.

We find that the trial court erred in dismissing counts one and two of the original indictment; thus, the order of dismissal is reversed and the cause remanded. The trial court correctly dismissed the second indictment and properly refused to dismiss counts three and four of the original indictment; thus we affirm in that regard.

The charges against the defendant arose from a reverse-sting operation. Robert Branson, a police informant, was supplied with one pound of marijuana by the Kingston Police Department and instructed to offer it for sale to the defendant. On August 2, 1991, the defendant allegedly bought the marijuana from Branson and sold him some Alprazolam. At the close of these transactions, members of the police department initiated an arrest. The defendant fled and tossed aside the bag of marijuana he had just purchased. Officers quickly apprehended him, however, and recovered the bag of marijuana.

## I

■ The state's initial argument is that the trial court erred in dismissing counts one and two of the original indictment on the basis that the marijuana purchased by the defendant was not lawfully acquired by the Kingston Police Department. That is, the department failed to adhere to statutory guidelines in procuring the marijuana ultimately sold to the defendant. While the state concedes that the proper procedure was not followed, it contends that the police department's error did not so affect the defendant's rights as to warrant suppression of the evidence and dismissal of the charges. *See State v. Danny Epps,* No. 87–300–III, 1989 WL 28906 (Tenn.Crim.App., Nashville, March 31, 1989), *perm. to appeal denied* (Tenn.1989). We hold that the evidence should not have been suppressed.

In the implementation of drug enforcement programs, officers may make use of illegal drugs that have been seized in their county. Tenn.Code Ann. § 53–11–451(d)(4). The statute does require, however, that officers obtain prior court approval of any plan to use the contraband. Here, the marijuana sold to the defendant by the police informant was originally seized in Blount County and later was, by court order, transferred to the Anderson County Drug Task Force. Anderson County officers then loaned the marijuana to the Kingston Police Department without first acquiring the approval of the court. The single question, therefore, is whether the violation of the statute precludes the state from utilizing the marijuana as evidence against the defendant.

The United States Supreme Court adopted a federal exclusionary rule in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). In the landmark case of *Hughes v. State,* 145 Tenn. 544, 238 S.W. 588 (1922), the Tennessee Supreme Court adopted a similar rule based on Art. 1, § 7 of the Tennessee Constitution. Then, in 1961, some 39 years after the Tennessee Supreme Court's decision in *Hughes,* the United States Supreme Court extended the federal exclusionary rule to state proceedings. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Even our state's Rules of Criminal Procedure now provide for the suppression of evidence obtained as a result of an "unlawful or invalid search or seizure." Tenn.R.Crim.P. 41(f).

■ The dual purposes of the exclusionary rule are to protect fundamental individual liberties and to deter improper police conduct. *See Weeks* and *Mapp, supra.* The Supreme Court expounded upon the reason for the rule in *Weeks:*

"The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgment of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights."

*Weeks* at 391, 34 S.Ct. at 343.

Initially, we hold a suppression of the evidence in this instance would not serve to protect individual liberties. No constitution-

al guaranties were abridged. The defendant had no idea that the marijuana he purchased from the police informant had been supplied by the Kingston Police Department. The source was obviously irrelevant to the defendant. There is also no indication that this marijuana was of a particularly high quality or had any other unique appeal which might serve as a special inducement for the defendant to buy. Thus, because we can find no significant connection between the failure on the part of the police to comply with the statute and the alleged criminal acts on the part of the defendant, a suppression of the evidence would contribute nothing toward the protection of individual rights.

Secondly, the defendant contends that even if the police department's improper conduct did not prejudice his individual liberties, the evidence must still be suppressed as a means to deter this type of police misconduct. While we agree that it is vital for law enforcement officials to perform their duties in accordance with the applicable statute, we do not agree that suppression of this marijuana as evidence against the defendant is the only means of deterrence. The aim of the statute is to preclude the possibility of corruption among law enforcement personnel charged with handling illegal drugs. Police officers are subject to the criminal law. If in this instance the police have failed to follow the procedures required in obtaining the marijuana, there is at least some evidence of an unlawful intent to possess. Prosecution might result. *See State v. Aubrey A. Stoddard*, No. 02C01–9211–CR–00261, 1994 WL 90468 (Tenn.Crim.App., Jackson, March 23, 1994).[1]

Finally, the defendant asserts that allowing this marijuana to be admitted into evidence would put the court in complicity with the Kingston Police Department's unlawful activity. We simply disagree with that logic.

■ In determining whether evidence offered by the state is so tainted by improper police conduct as to preclude its admission, there must be an examination of the nexus between the taint and the evidence. If the connection between the two is "so attenuated as to dissipate the taint, the primary taint is purged and the evidence is admitted because it is sufficiently distinguishable from the primary illegality." *State v. Williams*, 784 S.W.2d 660, 664 (Tenn.Crim.App.1989); *see United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); *Wong Sun v. United States*, 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

Generally, courts have adopted rules or doctrines which allow evidence to be admitted, though the product of unlawful police activity, so long as the rights of the accused are not compromised. 4 W. LaFave, *Search and Seizure*, § 11.4(a) (2d ed. 1987); *United States v. Brookins*, 614 F.2d 1037 (5th Cir. 1980). And, while Tennessee does hold police officers to a higher standard of conduct than many other states, these more permissive evidentiary guidelines remain consistent with our stringent standards. *Howard v. State*, 599 S.W.2d 280 (Tenn.Crim.App.1980).

The inevitable discovery doctrine serves as one example. Under this doctrine, illegally obtained evidence is admitted by the court when the evidence offered would have inevitably been discovered by lawful means. *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *State v. Carpenter*, 773 S.W.2d 1 (Tenn.Crim.App.1989). Another example is the independent source rule. The application of this rule depends on "whether the police did in fact acquire certain evidence by reliance upon an untainted source." 4 W. LaFave, *Search and Seizure*, § 11.4(a) at 378 (2d ed. 1987). Finally, Tenn.R.Crim.P. 5(a) provides that a person arrested without a warrant "shall be taken without unnecessary delay before the nearest appropriate magistrate" of the county in which the offense is alleged to have occurred and that "an affidavit of complaint shall be filed forthwith." In *State v. Readus*, 764 S.W.2d 770, 774 (Tenn. Crim.App.1988), this court held that an unnecessary delay in taking a defendant before a magistrate in violation of Rule 5(a) does not mandate suppression of a statement obtained during the delay, but is only one of several

---

1. In a drug offense prosecution of a police officer, our court held it was fundamental error not to instruct the jury that under Tenn.Code Ann.

§ 53–11–410(c) an officer may not be guilty if he possesses drugs in lawful performance of his duties.

factors to consider in determining whether a statement was voluntarily given. *See People v. Cipriano*, 431 Mich. 315, 429 N.W.2d 781 (1988).

■ In our view, the primary purpose of the statute in question is to require law enforcement agencies to account properly for illegal drugs seized through the performance of their official duties. Here, we find that the admission of the evidence will neither compromise any fundamental liberty interests nor serve to encourage unlawful police activity. In making this determination, we find no significant connection between the acts of the defendant and the unlawful acquisition of the marijuana by the Kingston Police Department.

**II**

■ Next, the state contends that the trial court erred in dismissing the second indictment, which charged the defendant with evidence tampering. The trial court dismissed the indictment for two reasons: (1) that it was the product of suppressed evidence and (2) that the defendant's act of tossing aside a bag of marijuana during the course of flight from law enforcement officials did not fall within the definition of evidence tampering.

Because we have held that the trial court erred in the grant of the motion to suppress, this indictment cannot be dismissed as a product of inadequate evidence; yet, we find that the trial court correctly determined that the defendant's conduct did not constitute evidence tampering. The offense is defined as follows:

(a) It is unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to: (1) Alter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding.

Tenn.Code Ann. § 39–16–503. While there are no Tennessee cases directly on point, the defendant cites several well-reasoned decisions of the Florida Courts of Appeal which directly address this issue. Because the Florida evidence tampering statute is almost identical to our own,[2] these opinions are especially persuasive.

In *Boice v. State*, 560 So.2d 1383 (Fla.App. 2 Dist.1990), a defendant threw aside a small bag of cocaine while being pursued by the police; the court held that the "mere abandonment" of evidence was not the type of conduct that the evidence tampering statute was enacted to address:

[I]f the defendant's act in this case constituted tampering, then a nineteen-year-old who threw a can of beer from his car when stopped by a police officer would commit not only the second-degree misdemeanor of possession of alcoholic beverages, but also the third-degree felony of tampering with the evidence.

*Id.*

Like the Florida District Court of Appeal, we do not believe that the legislature intended to inflict greater punishment upon an individual for attempting to discard evidence than he would receive for the commission of the crime. Statutes must not be construed in a manner which may lead to absurd results. *State v. Paul Horton*, 880 S.W.2d 732 (Tenn.Crim.App.1994). If "mere abandonment" of contraband falls within the class of offenses made criminal by Tenn.Code Ann. § 39–16–503, there is a substantial likelihood of an unreasonable result. Thus, we conclude that the trial court has a valid basis upon which to dismiss the second indictment. Even if the factual allegations within the indictment are accurate, the defendant, in our view, has not violated the terms of the statute.

**III**

■ The defendant asserts in his separate appeal that the trial court erred in refusing

---

**2.** Section 918.13 of the Florida Statutes states that:

(1) No person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, shall:

(a) Alter, destroy, conceal, or remove any record, document, or thing with the purpose to impair its verity or availability in such proceeding or investigation.

■ dismiss counts three and four of the original indictment. He claims that these counts do not state an offense because they fail to allege that he was a "defendant," as prescribed by the statute, at the time the acts were committed. The applicable statute provides as follows:

[I]t is an offense for a *defendant* to knowingly:

(1) Manufacture a controlled substance;

(2) Deliver a controlled substance;

(3) Sell a controlled substance; or

(4) Possess a controlled substance with the intent to manufacture, deliver or sell such controlled substance.

Tenn.Code Ann. § 39–17–417(a) (emphasis added). The defendant also argues that counts one and two of the original indictment fail to state an offense for the same reasons, thus providing this court with alternative grounds for upholding their dismissal. Again, we disagree.

■ Initially, the defendant claims that the statute is unambiguous and that the term "defendant" must be read literally. Courts determine whether a particular statute is ambiguous by looking to the context of the legislation. If unambiguous, judicial construction is unnecessary. *Carson Creek Vacation Resorts, Inc., d/b/a Carson Creek Campground v. State of Tennessee, Dept. of Rev.*, 865 S.W.2d 1 (Tenn.1993). If, however, reasonably informed persons could differ as to the meaning of that section in the context of the chapter, there must be an authoritative interpretation. *See State v. Spicewood Creek Watershed District, et al*, 848 S.W.2d 60 (Tenn.1993). By the use of these guidelines, we find that the use of the word "defendant" does create some ambiguity. The statute is, therefore, subject to interpretation. And, in the consideration of any legislation, courts must generally construe meaning "according to the fair import of … terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." Tenn.Code Ann. § 39–11–104.

The defendant alternatively contends that, if the statute is ambiguous, any ambiguity must generally be resolved in the defendant's favor. *See Key v. State*, 563 S.W.2d 184 (Tenn.1978). He points out that the 1989 Act changed the statutory language of these offenses from "person" to "defendant." The defendant claims that this change created an ambiguity in the statute and that he is entitled to the most favorable resolution of that ambiguity: a literal interpretation of "defendant."

If the defendant's interpretation is correct, only a person who is already a defendant in another proceeding would be capable of committing the most serious drug offenses. Other provisions of the 1989 Act belie that interpretation:

(a) It is an offense for a *person* to knowingly possess or casually exchange a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice.

(b) It is an offense for a *person* to distribute a small amount of marijuana not in excess of one-half (½) ounce (14.175) grams).

Tenn.Code Ann. § 39–17–418. (Emphasis added). In other words, the interpretation offered by the defendant would not allow most serious drug offenders to be convicted because they were not "defendants" at the time they committed the offense. In contrast, those guilty of casual exchange or mere possession of small amounts of marijuana are almost certain to be punished because the statute only requires that one be a "person" not a "defendant" when they commit these offenses.

Under these circumstances, the applicable factors lead us to conclude that the legislature did not intend to require that persons committing the most serious drug offenses already be "defendants" in order for their conduct to be punishable under Tenn.Code Ann. § 39–17–417(a). While the defendant correctly points out that statutory ambiguities should generally be resolved in favor of the defense, such a resolution here would lead to an absurdity. The 1989 Act appears to use the terms "person" and "defendant" interchangeably. The legislative history of

the Act does not reflect any effort to decriminalize drug offenses. If anything, the reverse is true. A just interpretation should reflect the objectives of the criminal code. Thus, we hold that the term "defendant" includes all persons.

Accordingly, the judgment of the trial court dismissing the second indictment and refusing to dismiss counts three and four of the original indictment is affirmed. The judgment of the trial court dismissing counts one and two of the original indictment is reversed; those counts are reinstated. The cause is remanded for trial.

TIPTON, J., and JAMES C. BEASLEY, Special Judge, concur.